FREDERICK A. YENNI, Appellant, *v.* JOHN McNAMEE, Respondent.

S. was the owner and in possession of a quantity of petroleum at his factory. His superintendent signed and delivered to him the following receipt: "Received on storage for account of S., 600 barrels petroleum, crude and refined, contained in tanks, and 700 barrels to hold the same, deliverable to his order on payment of the charges named therein, in accordance with the marginal note below. Storage, per month. Labor, ."

No oil was set apart as covered or described by this receipt. This instrument S. transferred, by indorsement to B., for full value, as collateral security to a loan, the property all the while remaining at the factory. Subsequently, a levy was made by the defendant, as sheriff, under an execution against S., upon it. After the levy S., with the consent of B., sold and delivered a part of the goods to the plaintiff, who knew nothing of the receipt or its transfer, but supposed he was buying of S. They were retaken from him by the defendant.—*Held*, in an action against him therefor, that such receipt was not a warehouse receipt under the statute (Laws of 1858, chap. 326), and the plaintiff could not recover.

Between S. and his superintendent, the instrument was a nullity. As between S. and B., it was in the nature of a chattel mortgage, and that being unrecorded, and the possession remaining in S., it was void as against creditors, and the levy made afterward was good. GROVER J.

(Argued May 19th; decided June 6th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the second judicial district, affirming the judgment of the Special Term in favor of defendant.

This action was brought to recover 123 barrels of petroleum oil taken by the defendant. The answer sets up that the oil was the property of one Stokes, and had been taken by the defendant, as sheriff of Kings county, on execution, to satisfy two judgments, recovered by the Oneida County Bank against Stokes. On the 6th of December, 1866, Stokes, the judgment debtor, was the owner of and carried on an oil refinery in Brooklyn. W. H. Chapman was his superintendent. On the 6th of December, the following receipt was signed by him and delivered to Stokes.

               "STERLING OIL WORKS,  
       "GREENPOINT, BROOKLYN, *Dec.* 6, 1866.

"Received on storage, for account of Edward S. Stokes, 600 barrels petroleum, crude and refined, contained in tanks, and 700 barrels to hold the same; deliverable to his order on payment of the charges named thereon, in accordance with the marginal note hereto.

"Storage,          per month.    Labor,

             "WM. H. CHAPMAN,  
                    "*Superintendent.*

The receipt was not for any designated or separate parcel of oil, but was intended to cover oil, crude, refined, or in process of refining in the works, and empty barrels to hold it. On the 16th of December, the Ocean Bank loaned Stokes $5,000, and received his note therefor, and, as collateral security, took the receipt above set out indorsed by him. There was no change of possession of the oil; none of it was set apart to answer the call of this receipt; and no one, on

behalf of the bank, ever saw the oil. The execution, against
Stokes, was delivered to the defendant on the 22d day of
December, and on the same day, a deputy went to the works
and levied on all the oil, barrels, etc., in the works, in the
manner stated in the opinion. Stokes was authorized
by the bank to sell the oil covered by the receipt, on
account of the bank. On the 8th of January, 1867,
Stokes sold to the plaintiff 150 barrels of oil. The oil
was delivered from the works to a lighter, and paid for on
delivery. Immediately after the oil was received by the plain-
tiff in New York, the sheriff reclaimed and took possession
of the 123 barrels, by virtue of the execution and levy. The
plaintiff knew nothing of the receipt, but dealt with Stokes as
owner.

*Joshua M. Van Cott*, for the appellant, cited Laws of 1830,
chap. 179, p. 203, § 3; Laws of 1858, chap. 326, p. 532, §§
3, 6; *Gibson* v. *Stevens* (8 How. U. S., 384, 399 to 400);
*Cartwright* v. *Wildenning* (24 N. Y., 521); *Sturtevant* v.
*Orser* (24 N. Y., 538); *Dows* v. *Greene* (24 N. Y., 638);
*Bonita* v. *Mosquera* (2 Bosw., 401, 445).

*Francis Kernan*, for the respondent. On the question of
the levy. (*Barker, Sheriff,* v. *Binninger*, 14 N. Y., 270, 277,
278; *Green* v. *Burke*, 23 Wend., 490, 493; *Barker* v. *Miller*,
6 John., 195; *Dillenback* v. *Jerome*, 7 Cowen, 294, 297;
*Dezell* v. *Odell*, 3 Hill, 215.) The Ocean Bank had no valid
title to the property as against the judgment and execution.
(*Gardiner* v. *Sugdam*, 3 Seld., 357, 362; *White* v. *Wilkes*, 5
Taunt., 167; S. C., 1 Eng. Com. Law, 98; *Austin* v. *Craven*,
4 Taunt., 643; *Field* v. *Moore*, Hill & Denio, 418; *Rapelye*
v. *Mackie*, 6 Cow., 250; *Wilkes* v. *Ferris*, 5 John., 335, 344;
2 Kent's Com., 500.) To render a refusal to charge as
requested error, the request must be in such form that the
court is bound to charge the same without qualification.
(*Carpenter* v. *Stillwell*, 11 N. Y., 61, 79; *Doughty* v. *Hope*,
3 Denio, 594, 599; S. C. Affd., 1 Seld., 79; see, also, *Win-
chell* v. *Hicks*, 18 N. Y., 558, 565, and cases cited.)

GROVER, J.   There was a valid levy of the execution made upon the oil in question.   There was nothing for the jury to pass upon in respect to that.   The proof was undisputed that the deputy sheriff, after receiving the execution, proceeded with it to the oil works, where the oil was in plain view and subject to his control, and there openly, in presence of the persons having the care of it, asserted that he levied the execution thereon, and forbade its removal, and that he subsequently made an inventory thereof.   These acts were sufficient to constitute a levy.   (*Barker* v. *Benninger*, 14 N. Y., 270.)   The testimony of the elder Stokes did not show an abandonment of this levy.   It was not, therefore, necessary to submit the question whether his was the true version of what occurred in the interview between him and the under sheriff, or whether the testimony of the officer in respect thereto was true, to the jury.   Whatever title Stokes, the execution debtor, had to the oil, was subject to the lien of the execution, and so continued on the 8th of January thereafter, when he, through a broker, contracted to sell the same to the plaintiffs, and on the 14th of January, when he delivered the same pursuant to such contract, and received payment from the plaintiffs therefor.   Stokes testified that he was authorized to make this sale to the plaintiffs by the president of the Ocean Bank.   If, therefore, the bank had title to the oil as against the execution, the plaintiff, by his purchase from Stokes, acquired this title, and the judge erred in directing a verdict for the defendant.   The question to be determined is whether the bank had such title.   It was agreed by the parties upon the trial, that Stokes was the owner of the oil prior to the 6th of December, 1866.   It was proved that for some time prior thereto he was the owner of a building and machinery in Brooklyn adapted to the business of refining oil, and that he had been for some time engaged in carrying on that business in the building; that Wm. H. Chapman was employed by him to superintend such business; that the oil in question, together with other oil, had been purchased by Stokes for the purposes of the business, and was then in tanks in said build-

ing, and that he had barrels in a shop for the purpose of barreling the same when refined. On the 6th of December Stokes directed Chapman to make the following receipt, which he accordingly made and delivered to Stokes:

> "STERLING OIL WORKS, GREENPOINT,
> *December 6th,* 1866.

"Received on storage, for account of Edward S. Stokes, 600 barrels petroleum, crude and refined, contained in tanks, and 700 barrels to hold the same deliverable to his order on payment of the charges named therein, in accordance with the marginal note hereto. Storage,    per month. Labor,

> "(Signed)          WM. H. CHAPMAN,
> "*Superintendent.*"

Stokes wishing to make a loan of the Ocean Bank, procured a discount of his note for $5,000 by the bank, and to secure the payment thereof at the same time indorsed his name upon this receipt and delivered the same to the bank, by which it was retained until after the sale of the oil to the plaintiff. Of this receipt the plaintiff knew nothing, nor did he know of any claim of the bank to the oil at the time of the purchase and delivery of the same to him. This latter fact will not prejudice the title of the plaintiff, if, as claimed by his counsel, the bank acquired title to the oil, valid as against the execution by the indorsement and delivery of the receipt to it. This claim is attempted to be sustained upon the ground that the instrument was a warehouse receipt, within the meaning of section 6, chap. 326, Laws of 1858. That section, among other things, provides that warehouse receipts given for any goods, etc., stored or deposited with any warehouseman, wharfinger, or other person, may be transferred by indorsement thereof, and any person to whom the same may be so transferred shall be deemed and taken to be the owner of the goods, etc., therein specified, so far as to give validity to any pledge, lien or transfer made or created by such person or persons. The first inquiry is whether the instrument in question was a warehouse receipt within the

meaning of the above section. Before examining this question, it is proper to notice that Edward S. Stokes testified that in the month of December prior to receiving the receipt from Chapman, he conveyed the oil works to his mother. It is urged by the counsel for the defendant that this changed the previous relations existing between Stokes and Chapman; that the latter thereafter ceased to be the employee of the former, and must be regarded as the agent of his grantee. The answer to this is, that there was no change of possession or change in the business; that Stokes continued in possession of the property, and to carry on the business the same after as before the conveyance until after the sale to the plaintiff. The conveyance was, therefore, immaterial. It is obvious that, as between Stokes and Chapman, the receipt was a mere nullity. It in no respect changed the possession of the oil or the rights and liability of either in respect thereto. The possession continued in Stokes, and all the duties of Chapman in regard to it were those of a mere servant. It is equally clear, that the plaintiff acquired no title by their purchase through the receipt held by the bank, unless the latter was the owner free from the lien of the execution, although the bank authorized the sale, for the reason that the plaintiffs knew nothing of the receipt, or of any claim of the bank at the time of the purchase, but bought of Stokes, as owner, in ignorance of any other title. Had their purchase been made of the bank, upon the faith of its ownership by virtue of the receipt indorsed to it by Stokes, their position might have been different. It is only purchases so made or liens so acquired that come within the letter or intention of the statute. The design was to protect parties dealing with the holder of the receipt upon the belief of his ownership founded thereon, although, in fact, he might not be the owner of the property, and have no power or authority to encumber it. The plaintiffs do not, therefore, bring their case within the section under consideration, and cannot derive any benefit therefrom. The inquiry is, did the bank acquire an absolute title to the property by the indorsement of the

receipt to it by Stokes, so that it was not thereafter liable to be levied upon and sold upon an execution against him. To show that it did, the counsel relies upon section 3 (4 Statutes at Large, 461), of the act for the amendment of the law relative to principals, factors or agents. But that section has no application to the case. Stokes was the owner of the property. He was in no sense the factor or agent of any other person who was the owner. The only purpose of that section was to protect parties dealing in good faith in regard to property with agents and factors of owners who had intrusted such agents with the possession of the property or the instruments showing the apparent title in them, who had sold or encumbered the property in violation of their duty to their principals. It is not any other owner of the property claiming it as against the bank, upon the ground that Stokes had disposed of it in violation of the instructions of such owner. Were that the case, the section under consideration would constitute a perfect defence. But this is the case of a judgment creditor of Stokes pursuing the property by execution, and it is incumbent upon the plaintiffs to show that the bank had acquired such a title as to exempt it from levy thereon. There is no doubt but that Stokes intended to confer some title to the property by indorsing and delivering the receipt to it; and the bank, by accepting it, intended to acquire an interest in the property. Although the mode adopted was informal, it was, I think, effectual to accomplish the object of the parties. A transfer of a warehouse receipt by indorsement, with intent to transfer the title to the property specified therein, is effectual under the law merchant, independent of the statute, to transfer the title. (*Gibson* v. *Stevens*, 8 Howard's U. S. Reports.) Had Stokes, therefore, indorsed and delivered the receipt to the bank in good faith, upon an absolute sale of the property to the bank, I am not prepared to say that the bank would not thereby have acquired the title, although the receipt was a mere fiction between Stokes and Chapman. Both of the latter would have been estopped from denying

that the receipt was based upon a real transaction. This estoppel would have been equally effectual against all claiming under Stokes upon a title subsequently acquired. The title having passed from him to the bank, he could not divest such title, and could not, therefore, transfer any to another person. But Stokes transferred the receipt, and, therefore, the title to the property, as a mere security for the payment of his note. It was, therefore, a mere mortgage security. Section 1 (4 Statutes at Large, 435), provides that every mortgage or conveyance intended to operate as a mortgage of goods and chattels, thereafter made, which shall not be accompanied by an immediate delivery, etc., shall be absolutely void as against the creditors of the mortgagor, unless filed as required by the act. There was no compliance, in this respect, with the act. It has before been remarked, that the receipt was a mere fiction; that Stokes continued in the possession of the property until the levy was made. To make a mortgage given by him thereon a valid security against his creditors, he must either be divested of the possession, or the mortgage must be filed as required by the act. The making of a fictitious paper, showing an apparent change of possession, when none in fact is made, is not a compliance with the statute, but, if held effectual, would work a complete evasion. It may be said that, if this be correct, there will be no safety in acquiring title to property as a security, by the indorsement of a genuine warehouse receipt. The answer to this is, that when such a receipt is given, the owner parts with the possession by delivering the property to the warehouseman as his bailee. Upon taking the receipt, it becomes the duty of the bailee, under the statute, to retain possession until the receipt is returned, or its non-production satisfactorily accounted for. Upon the indorsement and delivery of the receipt to a third person as a security, the title and right of possession passes to the transferree, and the warehouseman at once, without any notice, becomes bailee of the latter. (*Gibson* v. *Stevens, supra.*) This works all the delivery and change of possession of which the subject of the transfer is

capable, and is a compliance with the statute in that respect, and the transaction therefore valid.

The judgment appealed from must be affirmed, with costs.

All agree to the result on the ground that the paper writing signed by the superintendent of Stokes was not a warehouse receipt, under the act. FOLGER, J., did not sit.

Judgment affirmed.