JESSE HOYT AND OTHERS, RESPONDENTS, *v.* THE HARTFORD FIRE INSURANCE COMPANY, APPELLANT.

*Warehouse receipt — when it transfers the title of the property receipted for — policy of insurance — assignment of — right of the assignee to recover thereon.*

September 5, 1877, the defendant issued to óne Heuberer, a policy of insurance for $5,000, upon 10,000 bushels of corn, owned by him and contained in his mill in the city of Brooklyn. The policy covered property owned by him, or held in trust or on commission, or sold but not delivered, and provided that in case of actual sale of the property or transfer of the title thereto, upon leave being previously had, the policy might be assigned. May 16, 1878, the plaintiffs having agreed to loan Heuberer $5,000 upon the corn, received from him a warehouse receipt stating that he had received on storage for their account 10,000 bushels of corn, to be made into corn meal, deliverable to their order on payment of the charges, the words "not negotiable" being written across its face. The corn was then worth $4,700. On the same day the policy was assigned to the plaintiffs, with the consent of the company thereto indorsed thereon. In September, 1878, the policy was renewed, the premium being paid by Heuberer. In December of that year the mill and its contents were destroyed by fire.

*Held,* that as between the plaintiffs and Heuberer the receipt operated to transfer the title of the corn to the plaintiffs, and that they, as the owners thereof,

were entitled to recover from the defendant the amount due upon the policy. (BRADY, J., dissenting.)

An indorsement upon the policy provided that it was not assignable for purposes of collateral security, but that in all such cases it was to be made payable in case of loss to the party to be secured, by an indorsement to that effect upon its face.

*Held*, that this did not apply to a transfer of the property insured, but only to cases in which the policy alone was to be used as a security.

APPEAL from a judgment in favor of the plaintiffs, entered upon a verdict directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the trial was had.

*Charles W. Bangs* and *Francis Lynde Stetson*, for the appellant.

*Stephen A. Walker*, for the respondents.

DANIELS, J. :

The recovery in this action was upon a policy of insurance issued by the defendant to Charles E. Heuberer in the sum of $5,000 upon 10,000 bushels of corn contained in his mill situated in the city of Brooklyn. The policy was dated the 5th of September, 1877, and was by its terms to continue in force for the period of one year from the ninth day of the same month. At the expiration of that time it was renewed by a certificate issued for that purpose for a further period of one year, and before the expiration of that time the mill together with the corn which was made the subject of the insurance was destroyed by fire. After the policy was issued, and on or about the 16th of May, 1878, Heuberer applied to the plaintiffs for a loan of $5,000 upon the corn, which they consented to make. And for the purpose of carrying the agreement into effect, Heuberer executed and delivered to them a warehouse receipt stating that he had "received on storage for account of Messrs. Jesse Hoyt & Co., ten thousand bushels of corn, to be made into corn meal, deliverable to their order on payment of the charges accrued thereon, and in accordance with the marginal note hereto." This receipt was signed by Heuberer, and the note on the margin contained the statement "ten thousand bushels corn to be made into corn meal." Under the receipt was a printed

statement relating to its negotiability, which it is not important to notice for the disposition of the case. The receipt itself was marked "not negotiable." It was not issued upon a transaction included within the terms of chapter 326 of the Laws of 1858, and for that reason it will not be necessary to consider the provisions of that act.

The receipt was not invalid because it was not issued upon a transaction within the terms of the act, for it was still a lawful contract between the parties to it under the general principles of the common law, in no way restricted by anything contained in the statute. And as the corn was actually in store at the time when the receipt was issued, and the evidence showed that it so continued down to the time of the loss by fire, it took effect as a valid transfer of the property to the plaintiffs, although it was not in fact separated from other property of the same description either then in the mill or afterwards received there and disposed of by Heuberer. (*Kimberly* v. *Patchin*, 19 N.Y., 330; *Parshall* v. *Eggert*, 54 id., 19.)

Under these authorities Heuberer, by force of the receipt, became the bailee of the corn for the use and benefit of the plaintiffs, and their rights to it were in no manner diminished by the circumstance that the receipt entitled them to have the corn ground into corn meal. That was a privilege reserved to them which they could avail themselves of or not as they afterwards might elect. They made no such election, and consequently the instrument issued to them retained simply its character of a receipt by which the party subscribing it was obligated to hold the corn for their benefit. The corn itself appeared to be worth the sum of $4,700, and as the plaintiffs advanced the sum of $5,000 upon it, this left no interest whatever in the person issuing the receipt.

The nature of such an instrument was considered in *Yenni* v. *McNamee* (45 N. Y., 614), where it was held to be inoperative as to a creditor afterwards levying upon the property, but it was at the same time conceded to be valid between the parties to it substantially according to its terms. (Id., 620, 621.)

An instrument of the same nature was also considered by the court in *Gibson* v. *Stevens* (8 How. [U. S.], 384.) The plaintiff there simply advanced money upon the receipt to the parties to whom it had been issued, and the point presented was the extent of

the interest acquired in that manner by him. The opinion of the court was delivered by the chief justice who stated that an indorsement and delivery of the warehouse document in consideration of the advance of the money made by the plaintiff, transferred " to him the legal title and constructive possession of the property, and the warehousemen from the time of this transfer became his bailees and held the pork and flour for him." (Id., 399.)

" To the extent of his advances he is a purchaser, and the legal title was conveyed to him to protect his advances * * *. The legal title, the right of property, passed to him and McGueen and McKay retained nothing but an equitable interest in the surplus, if any remained after satisfying the claims of Gibson." (Id., 400.)

Even if this transaction should be considered a mortgage, as it affected personal property, the right of the plaintiff to it would be substantially the same. For a mortgage of such property is a transfer of the title to it as a security for the debt. (*Conard* v. *Atlantic Ins. Co.*, 1 Pet., 386; *Bank of Rochester* v. *Jones*, 4 Comst., 497.)

The transaction presented by the last case was similar in substance to the one now before the court. For the bank advanced its money upon a draft for the security of which the receipt issued was transferred to it, and it was there held by the court that " in a mortgage of chattels the general property passes to the mortgagee." " And the delivery of the carrier's receipt or bill of lading to the bank for a valuable consideration passed to the bank the legal title of the same." (Id., 507.)

It is clear, therefore, that the effect of this transaction must have been to vest the title to the corn in question in the plaintiffs. They became its owners inasmuch as the advances upon it by them exceeded its value. No right or interest whatever was left in Heuberer, beyond a mere formal privilege to redeem it by the payment of the money. And as the value of the corn was less than the money advanced upon it, that was simply a naked and technical right of no value whatsoever.

Under the same date as that of the receipt the policy in controversy was assigned by Heuberer to the plaintiffs, and their right to recover for the loss of the corn under it was resisted practically because they were not its owners, and also that Heuberer had no such title as rendered the policy at any time obligatory in its nature.

It was by its own terms issued to him upon property owned by him, or held in trust, or on commission, or sold, but not delivered. At that time he was the owner of the corn, and the policy therefore became a valid insurance to him. He was then the sole, absolute and unconditional owner of the property insured, and that portion of the policy which rendered it conditionally dependent upon this circumstance was satisfied by the fact. And if the policy had continued to be held by him it would have remained an equally valid instrument under the clause by which it was expressly made to include property sold and not delivered.

By the delivery of the receipt under the arrangement made between the parties, a change did take place in the title. But that was consented to by the agents of the defendant, and that consequently did not invalidate the policy. It was provided by an indorsement upon it that the policy was not assignable for purposes of collateral security. But in all such cases it was to be made payable in case of loss to the party, to be secured by an indorsement upon its face.

This restraint, however, did not include the transaction between these parties. For it was so made as to relate simply to the class of cases in which the policy itself was alone to be used for the mere purpose of a security. This was not a transaction of that nature, but it was, as has already been shown, a sale and transfer of the title to the property itself, by which the plaintiff became its owner, subject only to a mere naked right of redemption. And that brought it within the other clause indorsed upon the policy, declaring that "in case of actual sale or transfer of title, leave being previously obtained, the form subjoined may be used, which must be executed at the time of said transfer."

This, it will be observed, is not limited to a case in which an absolute or indefeasible title to the property may be transferred, but it includes every sale or transfer of the title to the property insured. And that which was made by Heuberer to the plaintiffs was clearly within these terms, for it operated as a transfer of the title to the corn to the plaintiffs, and that authorized them to receive a transfer of the policy and to continue it as an insurance in their favor. In order to render it an insurance to them as such owners of the corn, the following consent was given in writing, subscribed by the

persons authorized to represent the company as its agents: "The property hereby insured having been purchased by Jesse Hoyt & Co., the Hartford Fire Insurance Company consent that the interest of Charles E. Heuberer in the within policy may be assigned to said purchaser, subject, nevertheless, to all the conditions therein mentioned and referred to." This was dated on the 15th of May, 1878, the day before the date of the receipt. And it was followed by an assignment dated on the same day as the receipt, by which Heuberer transferred, assigned and set over unto Jesse Hoyt & Co., and their assigns, all his right, title and interest in the policy, and all benefits and advantage to be derived therefrom. The transaction upon which this consent was given to the assignment so made was within the terms of the indorsement already mentioned made upon the policy. For the property insured had been purchased by Hoyt & Co., and the title to it had been transferred to them. The policy, therefore, from that time was a valid insurance in their hands upon this interest, and the certificate afterwards issued by the company continued it in force down to and including the time of the fire.

The proofs of loss which were served in compliance with what the policy required upon this subject were made out by Hoyt & Co., and were received in that form by the company. This was in strict compliance with the terms of the policy which allowed the assignee owning the property to make such proof, for it was only when the assignor of the policy continued to own the property that the proofs were required to be made by him.

Evidence of commercial usage relating to transactions of this nature was received at the trial against the objection and exception of the defendant. But, as the other facts established in the case entitled the plaintiff to a recovery under the terms of the policy, this evidence requires no particular consideration. Whether it was admissible or not, it was of no consequence whatever in determining the rights of these parties. They were settled and controlled by the other facts concerning which there was no substantial dispute. And even if this evidence should be held to have been improperly received, it produced no possible harm. As the case was established by the evidence given at the trial, the plaintiffs were entitled to recover for the amount of the loss sustained by them through the destruc·

tion of the corn, and as there was no question of fact, and the case was so treated at the trial by the counsel for both parties, the court was justified in directing a verdict in favor of the plaintiffs, and the judgment entered upon it, as well as the order denying the motion for a new trial, should be affirmed, with costs.

Davis, P. J.:

I concur in the views and conclusions of my brother Daniels.

Brady, J. (dissenting):

In September, 1877, Charles E. Heuberer was, and continues to be a grain warehouseman and miller, conducting his business at the Pacific Mills, so called, in the city of Brooklyn. He was not strictly a warehouseman, but had on storage at his mills, either received from others or owned by himself, a large quantity of corn, oats and other cereals. On the 5th of September, 1877, the defendant issued to him a policy of insurance, which is the subject of this action. It was for the sum of $5,000, and for " merchandise, hazardous and extra hazardous, his own or held by him in trust or on commission, or sold but not delivered, contained in the brick building known as the Pacific stores," etc. The conditions of the policy in the printed part seem to be the usual ones. The chief of them having any bearing upon the question considered in this case provides that if any change takes place in the title or possession of the property, whether by sale, transfer or conveyance, legal process or judicial decree, or if the assured is not the sole, absolute and unconditional owner of the property insured, then in such case the policy shall be void.

On the 16th of May, 1878, Heuberer applied to the plaintiffs for a loan of $5,000 on 10,000 bushels of grain in his mill in Brooklyn and the loan was made. He gave to them a paper of which the following is a copy :

" No. 117.      Charles E. Heuberer,
     " Steam Elevator and Grain Warehouse,
       " *Pacific Stores*, 30 *to* 38 *Columbia Street*,
           " Brooklyn, *May* 16*th*, 1878.

" Bush. gross, bush. screenings, bush. nett.

" Received on storage from................., in Pacific stores, for account Messrs. Hoyt & Co., ten thousand bushels corn, to be

made into corn meal, deliverable to their order, on payment of the charges accrued thereon, and in accordance with the marginal note hereto.

"CHAS. E. HEUBERER."

"Ten thousand bushels corn, to be made into corn meal."

(Written across the face in red ink) "Not negotiable."

"The annexed receipt may be transferred by indorsement (unless the words 'not negotiable' be written or stamped on the face thereof), and any person to whom the same may be so transferred will be deemed and taken to be the owner of the property herein specified, and no property can be delivered except on the surrender and cancellation thereof. *Vide* sections 6 and 8 of the act to prevent the issue of false receipts, and to punish fraudulent transfers of property."

"Entered folio...."

The transaction was made upon the exchange and no time was fixed for the repayment of the money, and no agreement of any sort with reference to this subject was made between the parties.

Heuberer, upon the same day, assigned and delivered to the plaintiffs the policy of insurance in suit, which was presented to the company's agent and the consent signed, as follows : "This property having been purchased by Jesse Hoyt & Co., the Hartford Fire Insurance Company consent that the interest of Charles E. Heuberer in the within policy may be assigned to said purchaser, subject, nevertheless, to all the terms and conditions therein referred to."

Upon the 11th of September, 1878, the policy was continued for one year, to September 9, 1879, the renewal premium being paid by Heuberer. Upon the 4th of December, 1878, a fire occurred which entirely consumed the mill, and much more than 10,000 bushels of corn. The plaintiffs gave notice of the fire and loss, and upon the 24th of December, made formal proofs under oath.

In the proofs thus furnished the plaintiffs alleged that the property insured consisted of 10,000 bushels of corn, No. 2, which belonged to them solely, and had so belonged since the 16th of May, 1878, besides whom no other person had any interest whatever in the property, or in any part of it. The defendant having declined to pay, the plaintiffs brought this action, alleging that

Heuberer, the assured, sold, assigned and transferred to them the merchandise insured, as already stated.

Upon the conclusion of the plaintiffs' case, the salient features of which have been stated, the complaint was dismissed upon the following grounds:

*First.* That it appeared by the proof that the plaintiffs had at the time of the fire no insurable interest in any of the property which was injured by the fire.

*Second.* That the policy, according to its terms, did not attach to any property in which the plaintiffs, under their arrangement with Mr. Heuberer, had an interest.

*Third.* That such an interest as the plaintiffs may have had in the property which was injured by the fire was not insured or covered by the terms of the policy.

*Fourth.* That the facts proved or given in evidence did not constitute, in their most favorable light for the plaintiffs, a cause of action in their favor.

The defendant, in confirmation of the views expressed in the grounds upon which the motion was made to dismiss the complaint, insists that the receipt was insufficient to vest an absolute title to the corn in the plaintiffs, and, not being absolute owners of the property burned, they were not entitled, under the pleadings, under proof of loss or under the policy, to the recovery of the amount claimed.

We do not deem it necessary to follow the discussion presented upon the briefs as to the character of the paper called a receipt, in connection with the statute of 1858 in reference to warehouse receipts, nor do we deem it necessary to consider, in that connection, the proof of custom given upon the trial relating to such an instrument, for the reason that the evidence distinctly establishes, as a legal result, that it was given, not as an absolute transfer of the property mentioned in it, but as collateral security for the payment of an advance or loan, and that the plaintiffs' title to the corn was a defeasible one, which, they not having parted from, it might be destroyed at any time by the payment of the advance. Assuming that the delivery of such a paper, under the custom determining its effect, would be an absolute transfer of the merchandise described in the absence of any fact limiting its effect, as soon as

the evidence established that it was in fact, notwithstanding the custom, delivered as security for the payment of an advance, the signer still retaining an interest in the property; therefore the custom itself was overcome by the intention of the parties, which was that the custom itself should not prevail.

A bill of sale absolute on its face, that is, transferring property to be held as security for the payment of a debt, is in character and effect a mortgage, and is to be so regarded. In such a case the mortgagee acquires only a lien upon the assign's property. (*Smith* v. *Beattie*, 31 N. Y., 542; *Leitch* v. *Hollister*, 4 id., 211.) The interest of a mortgagee is not that of an owner. (*Savage* v. *Ins. Co.*, 52 N. Y., 507; *Perry* v. *Ins. Co.*, 61 id., 214. See also on this subject, and particularly applicable to the facts affecting the character of the transaction, *Yenni* v. *McNamee*, 45 N. Y., 614.)

This case substantially decides that such a transaction as that detailed herein, notwithstanding it is accompanied by the receipt mentioned, does not confer the absolute ownership of the property upon the person to whom it is given, and this result, namely, that the plaintiffs were not the absolute and unconditional owners of the property insured, rendered it impossible for them to recover, unless the right springs out of some other phase of the case. (*Savage* v. *Ins. Co.; Perry* v. *Ins. Co., supra.*)

The claim of the plaintiffs was based upon the proposition that they were the absolute owners of the property, because they so asserted in their proofs of loss and reiterated that allegation in their complaint. We do not discover in examining the case any answer to the result stated. The facts and circumstances and the authorities bearing upon the question seem to lead to no other conclusion than that the plaintiffs were not absolute owners within the terms of the policy, and which therefore as to them, in that aspect, was void.

The learned counsel for the respondent lays great stress upon the custom which was established in reference to the delivery of receipts such as were given to the plaintiffs in this case, but, as already suggested, the receipt fails in accomplishing the purpose which he insists was its design, in consequence of the proof to which reference has been made; that in fact it was delivered as collateral security. He thinks also, if the court is persuaded that the plaintiffs were not absolute owners, that nevertheless the defendant will

not be permitted to escape from the obligations of the policy and upon the proposition that the clause in it, namely, held by him in trust, or on commission, or sold but not delivered, would be sufficient to enable the plaintiffs to recover.

There would be great force in this suggestion were it not for the clause indorsed on the policy that it is not assignable for the purpose of collateral security, but in all such cases should be made payable, etc., by indorsements on its face. And this clause is in entire harmony with the general condition of the policy already considered, requiring that the assured should be the sole, absolute and unconditional owner of the property insured. The effect of this clause is such as to render it unnecessary to consider what relations other than debtor and creditor were created by the contract between Heuberer and the plaintiffs, as they cannot prevail against the rights of the defendant secured by the terms of the policy.

The learned counsel for the respondent also presents for consideration the proposition that Heuberer had an insurable interest of which the plaintiffs can avail themselves in this action; but the difficulty in sustaining it which at once presents itself is, that nothing of that kind was assignable by the terms of the policy. It contemplates an actual and absolute change of ownership, and such an effect was supposed to have been accomplished by the receipt which was given to the plaintiffs by Heuberer. As already suggested, such was regarded as the legal result of the delivery of that receipt by the plaintiffs, who in their proofs of loss and in their complaint, asserted an absolute and unconditional title to the property covered by the policy.

The right of the plaintiffs to recover has been successfully assailed and the judgment must be reversed and new trial ordered, with costs to abide event.

Judgment and order affirmed, with costs.