ROBERT J. DEAN and WILLIAM WILLS, Appellants, *v.* MARSHALL S. DRIGGS, Respondent.

*Warehousemen—liability of, for issuing receipts in violation of the provisions of chapter 326 of 1858, as amended by chapter 440 of 1866 — the liability does not depend on proof that the violation was willful — what proof will justify a recovery of damages by the person receiving the receipts.*

On March twenty-eighth the defendant, a warehouseman, signed two receipts, stating that he had received from Max Von Angern, to be held "on storage and to be delivered to his order on return of this receipt and payment of storage and charges, fifteen hundred barrels Portland cement," which receipts were deposited with a bank as security for a note made by Von Angern. The plaintiffs guaranteed the payment of the note, upon the transfer of the note and of the right, title and interest of the bank in the collateral security, to them, if requested at the time of such payment. The note not being paid by Von Angern, the plaintiffs, at the request of the bank, paid it and received the warehouse receipts.

Upon the trial of this action evidence was given by witnesses tending to show that the article they found in store upon the defendant's premises, and which they there examined, was not Portland cement.

*Held,* that the court erred in dismissing the complaint upon the ground that the evidence was insufficient to allow the plaintiff to maintain the action.

That a cause of action for a violation of the provisions of chapter 326 of 1858, as amended by chapter 440 of 1866—prohibiting any warehouseman from issuing any receipt for or upon any goods, wares or merchandise, to any person purporting to be the owner thereof, unless such goods, wares or merchandise shall have been actually received, and shall then be in the store or on the premises of the said warehouseman—was given to the plaintiffs by the concluding portion of section 7 of the said act, providing that "all and every person or persons aggrieved by the violation of any of the provisions of said act, as hereinbefore mentioned, may have and maintain an action at law against the

person or persons violating any of the provisions of said act, as hereby amended, to recover all damages, immediate or consequential, which he or they may have sustained by reason of any such violation, as aforesaid, before any court of competent jurisdiction, whether such person shall have been convicted, as hereinbefore mentioned, or not."

That it was not necessary to prove that the defendant had willfully violated the provisions of the act, but only that he had in fact violated them.

That the plaintiffs were not required to take and sell the property before bringing the action, but were entitled to recover the damages sustained by them on proving that the property was of no value over and above the charges of the defendant for keeping it in store, and that the person in whose name the receipts were issued was insolvent.

APPEAL from a judgment entered upon the dismissal of the plaintiff's complaint.

*Charles Blandy*, for the appellants.

*John Berry*, for the respondent.

DANIELS, J.:

The defendant, on the 28th of March, 1885, issued two warehouse receipts for Portland cement, each being, except as to the amount and the vessels from which it was received, in the same form. By the receipt for the larger amount of 1,500 barrels it was stated as follows :

"M. S. DRIGG's & Co.'s WAREHOUSES, }

"No. 1394. "NEW YORK, *March* 28, 1885. }

"Received from Max Von Angern, ex-Grimaldo, in store No. 278–280 South street, to be held by us on storage, and to be delivered to his order on return of this receipt and payment of storage and charges, fifteen hundred bbls. Portland cement.

Storage per month 4.

Labor.

"M. S. DRIGGS & CO."

These receipts were deposited as security with the Chemical National Bank for a note made by Max Von Angern, the person named in them, for the sum of $3,500. The plaintiffs guaranteed the payment of the note upon the transfer to them, or either of them, of the note itself, and all the right, title and interest of the

bank in and to the collateral securities specified or referred to therein, if requested at the time of such payment. The note was not paid at its maturity, and the plaintiffs, at the request of the bank, made payment of it and received the warehouse receipts.

The evidence given at the trial, as it was obtained from at least two of the witnesses, was that the article they found in store, and which they examined upon the defendant's premises, was not Portland cement. That, in the trade, includes cement having the quality of setting or hardening under water. Other evidence was given indicating that it might only, or partly, have been cement of this description, which had become hardened and useless by reason of its exposure to water or moisture. The court, however, deeming the evidence to be insufficient to allow the plaintiff to maintain the action, at the close of their case dismissed the suit, and to that direction an exception was taken. Whether this direction was warranted by the law must mainly, if not wholly, depend upon the construction which should be placed upon chapter 326 of the Laws of 1858, as that has been amended by chapter 440 of the Laws of 1866. For if the case, upon so much of the evidence as tended to prove that the article received and held in store by the defendant was not Portland cement, was such as to entitle the jury to find that fact in the plaintiff's favor, then the receipts issued by the defendant were untruthful and a violation of the first section of these acts. By that section it has been declared that no warehouse-man, wharfinger, public or private inspector, or custodian of prop-perty or other person shall issue any receipt, acceptance of an order or other voucher, for or upon any goods, wares, merchandise, pro-visions, grain, flour, or other produce or commodity, to any person or persons purporting to be the owner or owners thereof, or entitled or claiming to receive the same unless such goods, wares, merchan-dise, provisions, grain, flour or other commodity shall have been actually received into the store or upon the premises of such ware-houseman, wharfinger, inspector, custodian or other person, and shall be in store or on the said premises as aforesaid, and under his control at the time of issuing such receipt, acceptance or voucher. And if this article was not Portland cement then the defendant did issue warehouse receipts in violation of this section of the statute, for it has been expressly declared by it that no such receipts should

be issued unless the goods, wares, etc., shall have been actually received into the store or upon the premises of the person issuing it.

The law has, therefore, placed upon the person issuing the receipt the responsibility of having the property upon his premises, or in his possession as a warehouseman, before it will permit the receipt to be issued. And if the defendant did not have the property mentioned in the receipts, in this manner, at the time, he violated this section of the act in making and delivering the receipts. And by section 6 of the same act it has been further provided that the receipts may be transferred by indorsement, and any person receiving such a transfer of them shall be deemed and taken to be the owner of the goods, wares and merchandise therein specified, etc. By section 7 of the same act it has been further declared that "any warehouseman, wharfinger, inspector, custodian or other person who shall willfully violate any of the foregoing provisions of the said act as hereby amended, shall be deemed guilty of a misdemeanor, and upon indictment and conviction shall be fined in any sum not exceeding $1,000, or imprisonment not exceeding one year, or by both such fine and imprisonment, and all and every person or persons aggrieved by the violation of any of the provisions of said act, as hereinbefore mentioned, may have and maintain an action at law against the person or persons violating any of the provisions of said act, as hereby amended, to recover all damages, immediate or consequential, which he or they may have sustained by reason of any such violation as aforesaid, before any court of competent jurisdiction, whether such person shall have been convicted as hereinbefore mentioned, or not." And it is under the latter branch of this section that the plaintiffs have mainly derived their right to maintain this action against the defendant. But in answer to that position it has been objected, in his behalf, that this section imposed no liability upon him unless he willfully violated the first section of the act of 1858, as it was amended in 1866. That objection has been placed upon the first part of the section making it a misdemeanor, punishable by fine and imprisonment for any warehouseman, wharfinger, etc., to willfully violate the preceding provisions of the law. But after completing the enactment declaratory of the offense, it has then proceeded to declare that every person aggrieved by the violation of any of its provisions,

may have and maintain an action against the person or persons violating them, to recover all damages, immediate or consequential, sustained by such violation. And to create this right of action the qualification of a willful violation has been omitted.

This part of the act creating a right of action is separate and distinct from that which is declaratory of the criminal offenses. The former could not, on general principles, very well be committed without intentional wrong on the part of the person accused, and for that reason a willful violation of the act was made a necessary attribute of the crime, while that could not be a necessary or essential circumstance for the creation of a mere civil liability for damages. If the element of a willful violation should be held to be necessary to a right of action for damages, then the preceding provisions of the law would, in the large majority of cases, be wholly nugatory. The language in which they have been framed justify no such supposition as that the legislature intended there should be a willful violation in order to create a liability for damages under these sections of the act. They are, on the contrary, severally complete and intelligently expressed by themselves, and they have as distinctly prohibited the acts which they were intended to prevent, as that could very well be done by the use of language. In each of the prohibitory sections preceding section 7, it has been clearly declared what shall not be done, and by the first section, which includes these receipts, issuing them for Portland cement, never received by the defendant, was directly forbidden. That violated the provisions of the section, and by the latter branch of section 7, whenever such a violation shall take place, there the party aggrieved has been vested with the right of action for the recovery of his damages. Two classes of cases are very clearly contemplated — one criminal and the other civil — and to create a ground of action for damages all that has been prescribed is that the preceding provisions of the act shall have been violated to the injury or damage of the person complaining of it. This section is clearly divisible, in no manner subjecting the right of action for damages to the willful violation of the law, but making it dependent only on the circumstance that it shall have been violated to the injury or damage of an aggrieved party. The object of the acts was to correct irregularities which had previously arisen in the course

of this business, and to prevent warehouse receipts from being issued until the property mentioned in them reached the possession of the party issuing the receipts.

To some extent at least, a different practice had prevailed in the business, and persons relying upon and dealing in these receipts were liable to be subjected to losses by reason of their inability afterwards to obtain the property. What the legislature designed by these laws was the abrogation of that practice, and to render it certain that when warehouse receipts shall be issued the property mentioned in them must previously be placed in the custody of the warehouseman. If he could only be made liable in damages for willfully issuing an untruthful receipt, then there was no necessity whatever for this legislation, for such a liability would plainly exist without it.

Even the law, as it previously existed, was more provident of the rights of the person purchasing or loaning money on the faith of such receipts if the right of action must now depend upon a willful violation of the statute, for that would not permit the party making them against such dealers to protect himself by asserting that the property itself had never come to hand. (*Meyer* v. *Peck*, 28 N. Y., 590, 598, 599; *Armour* v. *Michigan Central R. R. Co.*, 65 id., 111; *Van Santen* v. *Standard Oil Co.*, 81 id., 171.)

It was to make the law still more complete and effectual than it had been previously understood to be that these statutes were enacted, and it will wholly deprive them of this effect to so construe them as to supply redress under their provisions only when the restraints of the law shall be willfully violated. In all civil cases such a construction would render these laws practically of no effect. Dealers in this class of securities would be much worse off in relying upon their provisions, if they should be so construed, than they were under the rules previously administered and enforced by the courts. Such legislation, so far as indemnity to injured or defrauded parties might be included, would be entirely useless, and it is not to be presumed that the legislature would submit to the farce of their enactment, when by their own declaration they rendered the preceding provisions of the law of no effect in the way of redressing private wrongs.

The cases of *Yenni* v. *McNamee* (45 N. Y., 614), and *Insurance*

*Company* v. *Kiger* (103 U. S., 352), sustain no such construction of the statutes as will exempt the defendant from liability. In neither of them did this question either incidentally or directly arise. The first was held not to be within their provisions, while the second proceeded upon the controlling fact that the property itself, which had been mentioned in the receipt, belonged to a third person and was taken out of the possession of the warehouseman by legal proceedings. They can have no weight or effect in the decision of this case, for it was proved, in part at least, that the law was violated by the issuing of these receipts, when in fact, the defendant at the time did not have the Portland cement mentioned in them in his possession or upon his premises, and a liability was created against him in the plaintiff's favor if the jury shall be satisfied that this was the truth of the case.

The statute has not made the plaintiff's right of action dependent upon their first taking and selling the property. The proof was that it was of no value over and above the charges of the defendant for keeping it in store, and the person in whose name the receipts were issued was proven to be insolvent. If the plaintiffs can maintain the action, no difficulty, therefore, stands in the way of proof being given substantiating their damages, and all that the law requires to create a right of action is that the receipts shall have been falsely issued and the persons dealing with them upon the faith of their truth shall have been injured and sustained loss.

The judgment should be reversed and a new trial ordered, with costs to abide event.

BRADY, J. :

I agree to the reversal of the judgment herein upon the ground that there was some evidence tending to prove that the receipt was false in stating that Portland cement had been received, the article received not being such in fact. The testimony is subject to criticism, but, nevertheless, it was, I think, sufficient to go to the jury.

Judgment reversed, new trial ordered, costs to abide event.